

ATTACHMENT A TO SCHEDULE #017

## LOAN AND SECURITY AGREEMENT NO. 0014507

THIS AGREEMENT, made by and between FIRSTAR EQUIPMENT FINANCE, a division of Firstar Bank, N.A. ("Secured Party"), with its principal place of business at 400 Highway 169 South, Suite 300, St. Louis Park, Minnesota, 55426; and A F K O, INC. ("Borrower"), a Alabama corporation with its principal place of business at 615 HAMBRICK ROAD, BOAZ, AL 35957.

WITNESSETH:

WHEREAS, Borrower wishes to borrow $162,000.00 from Secured Party to purchase the equipment described on attached Exhibit A hereto ("Collateral"); and

WHEREAS, Secured Party is willing to make such loan upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual terms, conditions, covenants, and obligations herein contained, the parties hereto agree as follows:

1. PRINCIPAL SUM AND INTEREST RATE. Secured Party agrees to lend Borrower $162,000.00 which sum is hereinafter called the "Principal Sum", with interest at the rate of 11.30% per annum, for a term of 60 months.

2. FUNDING OF LOAN. The Principal Sum shall be used to purchase the Collateral. Upon receipt of a certificate from Borrower acknowledging delivery of the Collateral and acceptance thereof, Secured Party shall forward the Principal Sum to the vendor of the Collateral ("Funding Date").

3. REPAYMENT OF LOAN. Borrower shall repay Secured Party an amount equal to $213,802.20, representing the Principal Sum and accrued interest according to the following schedule:

   Beginning 45 days from the day the Promissory Note is executed by Borrower, as evidenced by the date thereon, and on the same day of each of the 59 months thereafter, the sum of $3,563.37 shall be due and payable. Interest, precomputed to the due date based on the actual number of days elapsed divided by 365, is included in the foregoing payment installments.

   Payment shall be by United States currency, cashier's check, certified check, regular check, or withdrawal by Secured Party from Borrower's bank account via electronic transfer, as Secured Party in its sole option and discretion may from time to time direct.

   In the event that Borrower should fail to pay the Secured Party any principal and interest payment within five (5) days of the due date thereof, Borrower shall pay Secured Party a delinquent payment charge from the due date of the payment until paid at an annual rate of 18% or the highest lawful rate allowed by law. Borrower shall execute a secured Promissory Note in favor of Secured Party in form and substance satisfactory to Secured Party.

4. SECURITY INTEREST. To secure performance of its obligations hereunder, Borrower shall and does hereby grant Secured Party a continuing purchase money security interest in the Collateral, all parts thereof and all accessions thereto, and all proceeds from any and all of the Collateral. Borrower agrees to execute and file Financing Statements or certificates of title as applicable and do whatever may be necessary under applicable law to perfect and continue Secured Party's security interest in the Collateral, all at Borrower's expense. If the Collateral is titled equipment, the title shall show Borrower as owner and Secured Party as first secured party. The title will be held by Secured Party until all obligations hereunder are paid in full, at which time Secured Party will endorse said title releasing its interest in the Collateral. Secured Party will then forward the title to Borrower.

   The aforesaid security interest shall be a perfected valid first lien upon Borrower's right, title and interest in all of the Collateral, free and clear of all other liens, claim, and encumbrances. The parties hereto agree that this Agreement shall constitute a security agreement.

5. PREPAYMENT OF LOAN. The Promissory Note may not be prepaid without the prior written consent of Secured Party. Secured Party may condition its consent upon the Borrower's payment of all outstanding principal, all accrued interest to such date and a prepayment premium to be established by Secured Party, in its sole discretion.

C:\temp\loancorp.tmp

EXHIBIT A

6. **DESTRUCTION/LOSS OF NOTE.** If any Promissory Note shall become mutilated or shall be destroyed, lost, or stolen, Borrower shall, upon the written request of Secured Party, execute and deliver in replacement thereof, a new Promissory Note, payable in the same original principal amount and dated the same date as the Promissory Note so mutilated. Borrower shall make a notation on each new Promissory Note of the amount of all payments of principal theretofore made on the Promissory Note so mutilated, destroyed, lost, or stolen and the date to which interest on such old Promissory Note has been paid. If the Promissory Note being replaced has been mutilated, such Promissory Note shall be delivered to Borrower and shall be canceled by it. If the Promissory Note being replaced has been destroyed, lost, or stolen, Secured Party shall furnish to Borrower an indemnity agreement of Secured Party to save Borrower harmless from any loss.

7. **FINANCIAL INFORMATION.** Until all outstanding principal is paid, Borrower agrees to provide Secured Party with accurate and current information regarding its financial condition. Such information shall include, but not be limited to:

    a) Annual and/or quarterly Financial Statements to be received by Secured Party within one hundred twenty (120) days of the end of Borrower's fiscal quarter; and

    b) Such other financial statements, information, and financial data relating to the business affairs and financial condition of Borrower as Secured Party may from time to time reasonably request.

8. **INSPECTION OF COLLATERAL/REVIEW OF BORROWER'S RECORDS.** So long as Secured Party shall hold the Promissory Note, Borrower will permit any duly authorized representative designated by Secured Party to visit and inspect at Secured Party's expense the Collateral and to discuss Borrower's business affairs, finances, and accounts, all at such reasonable times and as often as Secured Party may reasonably request.

9. **INDEMNIFICATION.** Borrower shall defend, exonerate, indemnify, and hold Secured Party harmless from and against all claims, damages, liabilities, costs, suits, or obligations, including reasonable attorneys' fees and court costs, of every nature whatsoever arising out of or any manner connected with i) Borrower's obligations under this Loan and Security Agreement and/or the Promissory Note, and ii) Borrower's use, possession, or ownership of the Collateral.

10. **BORROWER REPRESENTATIONS AND WARRANTIES.** Borrower represents, covenant, and warrants that:

    a) Borrower's annual Financial Statements, which were tendered to Secured Party by Borrower, and upon which Secured Party has relied, are true, correct and complete, and fairly present the financial position of Borrower as of the date thereof; were prepared according to generally accepted accounting principles; and there has been no material adverse change in the financial condition, results of operations, assets, liabilities or business prospects of Borrower as of the date thereof.

    b) The making and performance by Borrower of this Agreement and the Promissory Note have been duly authorized by all necessary corporate action and will not violate any provision of law or Borrower's Articles of Incorporation or By-laws, or result in the breach of or default under any agreement or instrument to which Borrower is a party.

    c) There is no action, proceeding, or investigation before any court or other governmental agency pending or, to the best of Borrower's knowledge, threatened against Borrower which may result in any judgment, order, or decree having a material adverse effect on the business or financial condition, or the prospects of Borrower (on a consolidated basis, if applicable), and no such judgment, order or decree has been issued involving Borrower which has or will have such effect.

    d) No certificate, written statement, or document furnished to Secured Party by or on behalf of Borrower in connection with this Agreement and the transactions contemplated hereby contains, when taken together or independently, any untrue statement of material fact or omits to state any material fact necessary to make the statements contained therein not misleading. Borrower has disclosed to Secured Party in writing all existing information of which Borrower has knowledge which does, or might, adversely affect the business or financial condition of Borrower.

    e) Borrower is not in default in the payment of principal or interest on any indebtedness, and is not in default and no event has occurred or is occurring under the provision of any such instrument or agreement which, with the lapse of time or the giving of notice, or both, would constitute an event of default thereunder.

    f) Borrower has filed all tax returns required to be filed and all taxes shown thereon as being payable, have been paid; no controversy in respect of additional taxes, state or federal, of Borrower's is pending, or threatened, and the provision and reserves of the consolidated books of Borrower in respect to taxes are adequate.

    g) Borrower will not use the Collateral primarily for family, personal, or household uses.

h) Borrower is not known by nor does it transact business under any trade name except such trade names listed on Exhibit A hereto.

11. ADDITIONAL BORROWER OBLIGATIONS AND COVENANTS. So long as any amount remains unpaid on the Promissory Note, Borrower will, except to the extent Borrower has been released from said obligation by the prior written consent of Secured Party, (i) cause to be done all things necessary to preserve, renew, and keep in full force and effect its existence, to continue as a duly incorporated business in Borrower's state of incorporation and duly licensed and in good standing in all states wherein it does or contemplates transacting business; (ii) comply with all applicable laws, ordinances, and regulations and all agreements, contracts, and licenses in respect to the conduct of its business and the ownership of its property except to the extent that failure to comply therewith would not have a material adverse effect on Borrower's business or financial condition or on Borrower's obligations under this Agreement or the Promissory Note; (iii) maintain the Collateral in good condition and repair; (iv) at its own expense, maintain physical damage insurance in an amount as follows: a) for any titled Equipment, the amount of insurance against loss or damage shall not be less than the actual cash value of the Equipment, b) for any other type of Equipment, the amount of insurance against loss or damage shall not be less than the new replacement cost of the Equipment. Such policy providing insurance for the damage to the Equipment shall name Secured Party as Loss Payee as Secured Party's interest may appear and shall not have a deductible amount in excess of $2,500 without the express written consent of Secured Party; (v) promptly notify Secured Party if any Collateral is lost, stolen, destroyed or confiscated for any reason whatsoever: (vi) not sell, lease, pledge, or encumber the Collateral or move or transfer it from the state of its domicile location; (vii) timely file all federal, state and local income tax returns and file all tax returns and pay all taxes, fees, assessments and charges upon the Collateral and its assets and properties including, but not limited to, sales, use, personal property, ad valorem, value added, stamp, documentory and federal highway use taxes, and in respect of income and profits before they become delinquent (except that such claims may remain unpaid during any good faith contest thereof so long as the Collateral is at all times adequately protected); (viii) comply with all federal, state, and local laws, rules, and regulations applicable to its business, operations, and employees, and comply with all of its private agreements, contracts, and licenses; and (ix) in general provide such documents as Secured Party may request and as appropriate to carry into effect the intentions of this Agreement.

12. SECURED PARTY REPRESENTATIONS AND WARRANTIES. Secured Party represents and warrants that:

a) Secured Party is a National Banking Association duly and validly organized and existing in good standing under the laws of the United States.

b) Secured Party has full right and authority to enter into this Agreement and to carry out the terms and conditions hereof and the making and performance hereof have been duly authorized by all necessary corporate action and the execution hereof will not violate any provision of law or Secured Party's Articles of Incorporation or By-laws, or result in the breach of or default under any agreement or instrument to which Secured Party is a party.

13. EVENTS OF DEFAULT. If any one of the following events ("Events of Default") shall occur, Secured Party shall have the right and option to immediately exercise any or all of its rights under this Agreement or the Promissory Note ("Guarantor" as used herein shall mean such third party or parties which are guaranteeing the obligations of Borrower hereunder):

a) Failure of Borrower to pay any amount due under the Promissory Note by a method designated by Secured Party within five (5) days after it is due, or failure to pay upon demand any other indebtedness owing by Borrower to Secured Party, now existing or hereafter incurred; or

b) Borrower or Guarantor commits any breach of its warranties, covenants, or obligations under their respective agreement with Secured Party and Borrower or Guarantor fails to correct said breach within five (5) days after written notice; or

c) Any representation or warranty made by Borrower, or otherwise attributed to Borrower as provided herein, or by Guarantor proves to have been or is incorrect in any material respect; or

d) Borrower or Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee, or liquidator, (ii) be unable, or admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated bankrupt or insolvent; (v) file a voluntary petition in bankruptcy or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency law; (vi) fail to successfully dismiss an involuntary petition filed against it; or (vii) dissolve, terminate or discontinue its business; or

e) Borrower or Guarantor enters into any merger or consolidates with or into any other party; reorganizes, recapitalizes, or restructures; or sells, leases, or otherwise disposes of all or substantially all of its properties or its assets;

f) Borrower or Guarantor incurs an adverse change in its financial condition which Secured Party, in its sole and good faith discretion, deems to be material; or

g) The uninsured loss, theft, substantial damage, destruction, abandonment, sale, or encumbrance to, or of any material part of, the Collateral, or the making of any levy, seizure, or attachment of any material part thereof or thereon; or

h) The cancellation, failure to renew, or other loss or termination of any permit, license, or other right necessary for Borrower or Guarantor, if applicable, to continue operation of their respective businesses; or

i) Any indebtedness Borrower may now or hereafter owe Firstar Bank N.A. or any of its affiliates ("Firstar") shall be accelerated following a default thereunder or, if any such indebtedness is payable on demand, payment thereof shall have been demanded by Firstar.

14. REMEDIES. Should an Event of Default occur, Secured Party, may declare all or part of the principal and interest of the Promissory Note immediately due and payable, and/or exercise any of its rights to repossess all or some of the Collateral for purposes of satisfying all or part of the amounts due hereunder. Borrower shall pay all costs and expenses, including attorneys' fees and court costs, incurred by Secured Party in connection with an Event of Default. In the event any amounts due hereunder are not paid when due at maturity, or upon demand, and the Promissory Note is placed in the hands of an attorney for collection, Borrower hereby agrees to pay all attorneys' fees and collection costs incurred by Secured Party.

15. SECURED PARTY/DEBTOR RELATIONSHIP. Secured Party's interest in the Collateral granted herein shall not operate to create any managerial or fiduciary obligations with respect to Secured Party's relationship to the Collateral separate from the relationship of the parties herein as lender and borrower/debtor. Secured Party's obligations are only as expressly set forth herein. Borrower retains an exclusive and independent obligation for managerial decisions and control of the Collateral.

16. BINDING AGREEMENT; SURVIVAL OF WARRANTIES. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns. All representations and warranties contained herein or made in writing by or on behalf of Borrower in connection with the transactions contemplated herein shall survive the execution and delivery of this Agreement and the delivery of the Promissory Note. All statements contained in any certificate or other instrument delivered by or on behalf of Borrower pursuant hereto or in connection with the transactions contemplated herein shall constitute representations and warranties by Borrower hereunder.

17. ENTIRE AGREEMENT. This Agreement, including all Exhibits hereto and all documents herein specifically contemplated, embody the entire agreement and understanding between the parties. This Agreement supersedes all prior agreements and understandings, written or otherwise, relating to the subject matter hereof. This Agreement shall be of no force and effect until all requirements set forth herein are satisfied and this Agreement is accepted in writing by an authorized agent of Secured Party in St. Louis Park, Minnesota.

18. FURTHER ASSURANCES. Borrower shall execute and deliver to Secured Party, upon Secured Party's request, such further documents, instruments, and assurances as Secured Party deems necessary or advisable to evidence or perfect the security interest granted pursuant to this Agreement and to confirm or acknowledge Secured Party's rights hereunder, any assignment hereof and the interest of any assignee. In furtherance of the foregoing, Borrower agrees that Secured Party may, with respect to titled equipment, at its option, title the Equipment showing Borrower as owner of the Equipment and Secured Party as lienholder.

Borrower authorizes Secured Party to file, at Secured Party's option, any such instruments (including financing statements and certificates of title) without Borrower's signature, and if such signature is required by law, Borrower appoints Secured Party as Borrower's attorney-in-fact to execute such items. Such appointment is irrevocable and shall be deemed to be coupled with an interest. Borrower shall reimburse Secured Party for all expenses incurred by Secured Party in connection with this provision, including the costs of searches and all filings.

19. NOTICES. Except as otherwise specifically provided, all communications provided for hereunder shall be in writing and be deemed made when deposited in the United States mail, first-class postage prepaid or by confirmed facsimile, addressed to the party to receive the notice at its principal place of business.

20. MINNESOTA LAW. THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY, AND PERFORMANCE, REGARDLESS OF THE STATE OF MINNESOTA'S CHOICE OF LAW PROVISIONS.

21. MINNESOTA JURISDICTION. Borrower hereby consents to jurisdiction and venue of the federal or state courts sitting in the State of Minnesota for purposes of resolving all disputes of any nature whatsoever regarding this Agreement, the Promissory Note, or any transaction contemplated hereby and Borrower also waives any objection which it may now have or hereafter have to the laying of jurisdiction or venue in the federal or state courts of Minnesota, including, but not limited to, forum non conveniens.

22. NON WAIVER. The failure of any party hereto to exercise any of its rights or remedies under this Agreement shall not operate as a waiver of such right or remedy on any later occasion.

23. **HEADINGS.** The headings of the paragraphs in this Agreement are for convenience only, and shall not define or limit any of the terms or conditions contained herein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on this ✓18 day of ✓June 20 01.

BORROWER:
A F K O, INC.

By: ✓ Frank Johnston
Title: ✓ Pres
By: _____
Title: _____

SECURED PARTY:
FIRSTAR BANK, N.A.

By: _____
Title: _____

C:\temp\loancorp.tmp                    5